John W. Stephens, OSB No. 773583
stephens@eslerstephens.com
Michael J. Esler, OSB No. 710560
esler@eslerstephens.com
Kim T. Buckley, OSB No. 781589
buckley@eslerstephens.com
**ESLER, STEPHENS & BUCKLEY LLP**
121 SW Morrison Street, Suite 700
Portland, OR 97204-2012
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

Randolph C. Foster, OSB No. 784340
randy.foster@stoel.com
Timothy W. Snider, OSB No. 034577
timothy.snider@stoel.com
Rachel C. Lee, OSB No. 102944
rachel.lee@stoel.com
**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for All Defendants


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION


| | |
|---|---|
| JEFF BOARDMAN, et al., | Case No.: 1:15-cv-00108-MC |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL** |
| v. | |
| PACIFIC SEAFOOD GROUP, et al., | *Hearing: May 26, 2017 at 9:00 am Before Judge Michael McShane* |
| Defendants. | |


REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL

## I. REPLY ARGUMENT

**A.    The Court Should Not Relieve Plaintiffs from Their Undisputed Waiver.**

Plaintiffs do not dispute that they waived all their objections.  (Plaintiffs' Memorandum in Opposition to Defendants' Motion to Compel (Dkt. No. 124) ("Opp.") at 8-9.)  Plaintiffs also do not show good cause for the Court to relieve them of their waiver.

The very cases on which Plaintiffs rely confirm that excusing their prolonged delay would be extraordinary.  The longest delay among the cases that Plaintiffs cite is *nine days*. *Sec'y of Labor v. Kazu Constr., LLC*, No. 16-00077, 2017 WL 628455, at *3 (D. Haw. Feb. 15, 2017) (one week late); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C. 2005) (nine days late); *Valadez v. Aguallo*, No. C08-03100, 2009 WL 1814239, at *1 (N.D. Cal. June 24, 2009) (one day late).  Plaintiffs, by contrast, delayed not nine days, but *eight months*.

Moreover, the *Valadez* factors cited by Plaintiffs all weigh in favor of enforcing waiver:

(1)    <u>length of the delay</u>:  Plaintiffs waited eight months—and then waited another two weeks after Pacific Seafood again demanded the responses on April 7, 2017.

(2)    <u>reason for the delay</u>:  Plaintiffs offer no good reason for having ignored the express written notice on August 12, 2016.  Nor do they have any reason at all for delaying an additional two weeks after the renewed notice on April 7, 2017.

(3)    <u>bad faith</u>:  Plaintiffs ignored express written notice for months.  Then, they refused to produce *any* documents in response to Request No. 24 (inter alia, communications relating to the lawsuit) and Request No. 26 (documents that refer or relate to the lawsuit).  (*See* App. A.)  Next, after stonewalling those requests— which seek documents relevant to the tort counterclaims—Plaintiffs moved for summary judgment against the abuse of process and tortious interference counterclaims, arguing that Pacific Seafood *lacks evidence* of Plaintiffs' improper purpose.  (*See* Plaintiffs' Motion for Partial Summary Judgment (Dkt. 121) at 11-14.)  On May 10, Plaintiffs partially withdrew their objection to Request No. 24 (Opp. at 15), but to date Plaintiffs still have not produced *one single document* on *any* of the Discovery Requests.  These tactics strongly suggest a bad faith attempt to avoid discovery.

(4)    <u>nature of the request</u>:  As discussed in the Motion and below, the Discovery Requests are proper and necessary requests for highly relevant documents.

Page 1    -    REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL

(5)     <u>prejudice to the party seeking the disclosure</u>:  After delaying their responses for months, Plaintiffs moved for summary judgment against the tort counterclaims—months before the November deadline for dispositive motions—on the ground that Pacific Seafood lacks evidence.  Pacific Seafood is confident that the Court will deny the summary judgment motion, but by filing it Plaintiffs are attempting to parlay their delay into a prejudicial dismissal of the tort counterclaims.

(6)     <u>harshness of enforcing the waiver</u>:  Pacific Seafood moved for an order compelling Plaintiffs to produce all *non-privileged*, responsive documents. (Motion at 5, 11.)  Enforcing the waiver against non-privileged documents is not harsh.  *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (failure to timely object "constitutes a waiver of any objection.  *This is true even of an objection that the information sought is privileged*." (emphasis added)).

Plaintiffs waived their objections and have not shown good cause to be excused from the consequences.  The Court should order production of all non-privileged, responsive documents.

**B.     Plaintiffs Have Failed to Show That the Discovery Is Unduly Burdensome.**

Plaintiffs have not met their burden of showing that the discovery would be burdensome. *See Jane Doe 130 v. Archdiocese of Portland in Or.*, 717 F. Supp. 2d 1120, 1126 (D. Or. 2010) (party opposing discovery bears burden of establishing it would be unduly burdensome). Although Plaintiffs liberally sprinkle the term "burdensome" throughout their Opposition, they do not offer any evidence to substantiate it.  Indeed, Plaintiffs do not even make a cursory argument about *why* producing their documents would be an undue burden.  The Court should reject this boilerplate objection.

**C.     Contrary to Plaintiffs' Repeated Assertions, the PacFIN and AKFIN Databases Do Not Contain All of the Relevant Information Sought.**

Plaintiffs' refrain is that all the relevant information can be obtained from the PacFIN (West Coast) and AKFIN (Alaska) databases, rather than from Plaintiffs.  (Opp. at 5, 9-13, 16-18.)  Not so.  To begin with, the databases are unable to provide certain key information about seafood sales by fishermen:

- The PacFIN database reveals the location of delivery, but not where the fishermen caught the fish. By contrast, the information sought in Discovery Request Nos. 4 through 7 will indicate how far away from the point of delivery Plaintiffs caught their fish. (*Cf.* SAC ¶¶ 33-34 (alleging 60-100 mile limit).) This is significant to the definition of the relevant market, Plaintiffs' alleged antitrust injury and standing.

- The PacFIN database reports the number of pounds of a particular species delivered, and the total price paid for that species. The actual fish tickets, by contrast, are much more granular. They record the different prices that each processor pays for different sizes of each species *and* different quantities of each species. Many processors "limit" the number of pounds they will take of different species. When a fisherman goes over the limit, a particular processor may not take the fish, or it may subject the fish to "limit" (reduced) pricing. Understanding these differences is critical to understanding how much each processor is actually paying. It is also critical to understanding *why* fisherman want to deliver their fish to particular processors—why some processors are more successful than others. (Successful ones are willing and able to buy more fish and to pay for them.) Plaintiffs' own fish tickets are a valuable source of information not otherwise available to Pacific Seafood. (*See* Discovery Request Nos. 1-3, 29, 32.)

- Pacific Seafood's counsel has discussed the information contained in the PacFIN and AKFIN databases with the people who maintain those databases. They have learned that the databases do not contain actual composite prices paid by the offshore processor vessels known as "motherships," which are potentially part of the relevant markets. Rather, the databases contain only an imputed price for deliveries to motherships. Plaintiffs' records, particularly from Plaintiff Todd Whaley, will contain the actual amounts delivered to motherships and the actual prices paid. (*See* Discovery Request Nos. 1-3.)

Moreover, the Discovery Requests seek more than just seafood sales records. For example:

- Discovery Request No. 17 seeks *communications relating to* prices. PacFIN and AKFIN will not contain any information from Plaintiffs about ex-vessel pricing. Pacific Seafood is entitled to see whether Plaintiffs' emails do.

- Discovery Request Nos. 11 through 13 seek documents relating to Individual Fishing Quota ("IFQ") or Individual Transfer Quota ("ITQ"). Plaintiffs allege that Pacific Seafood's supposedly anticompetitive conduct includes holding quota shares. (SAC ¶ 48.) Plaintiffs' ownership, leases, loans, trades, use, and communications relating to quota shares are relevant to that allegation and to quota share economics, Plaintiffs' fishing options, and the effect on market definition.

- Discovery Request No. 8 seeks information about the regulatory constraints, including licensing status of officers, and fishing options of Plaintiffs' fishing vessels, which is relevant to the market definition analysis.

Page 3     -     REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL

- Discovery Request Nos. 9, 10, and 14 seek documents relating to the finances, profits, losses, cost structure, personnel compensation, and valuation of Plaintiffs' fishing operations. This information is necessary to analyze whether whiting, groundfish, and shrimp fishermen are under greater economic pressure from processors relative to fishermen in supposedly more competitive markets, as Plaintiffs' theory of ex-vessel price suppression asserts. (*See* SAC ¶ 53.)

In short, the Discovery Requests are not duplicative of the databases. The Court should compel Plaintiffs to produce the documents responsive to Discovery Request Nos. 1-17, 28-29, and 32.

## D.    Discovery into Countervailing Power Is Relevant to Market Power.

Plaintiffs claim that the market power inquiry excludes any countervailing power arising from collective negotiation by fishermen. (Opp. at 14.) Plaintiffs are wrong. Although countervailing power against an allegedly monopolist seller or monopsonist buyer may be less common than some other factors, the Ninth Circuit has never *excluded* countervailing power from the market power analysis.[1] Indeed, courts do consider countervailing power. *See, e.g.*, *United States v. Archer-Daniels-Midland Co.*, 781 F. Supp. 1400, 1422 (S.D. Iowa 1991) (looking to countervailing power of buyers against allegedly monopolist seller: "That this consolidation of buyer power [among large buyers] is an effective means of counteracting any potential market power that might be exercised by sellers is borne out by both economic theory and the facts."). The countervailing power documents sought by Pacific Seafood are highly relevant, and the Court should overrule the objections to Discovery Request Nos. 15 and 16.[2]

## E.    Plaintiffs' Attempt to Narrow Request No. 24 Should Be Rejected.

Plaintiffs now concede that they will produce documents that contain or relate to communications "about" this lawsuit. (Opp. at 15.) But the phrase in Discovery Request No. 24

---

[1] *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1438 n.10 (9th Cir. 1995), does not address this issue. Rather, it merely rejects a bright-line rule that market share necessarily creates market power and lists several typical factors that affect the market power analysis.

[2] The protective order will prevent any sensitive commercial information from being disclosed to Pacific Seafood. (Dkt. No. 63, ¶ 6.)

is communications "relating to" this lawsuit.  (*See* App. A.)  The Court should overrule

Plaintiffs' attempt to narrow the phrase "relating to" to "about."

**F.     Plaintiffs' Responses to Discovery Request Nos. 33 Through 44 Were Evasive.**

Plaintiffs responded to Discovery Request Nos. 33-44 claiming they "have no responsive

documents" to support a dozen paragraphs of their complaint.  (*See* App. A.)  As Pacific Seafood

explained, these responses are evasive because Plaintiffs *must* have at least some responsive

documents.  (*See* Motion at 11.)  Tellingly, the Opposition neither repeats the contention that

Plaintiffs possess no responsive documents, nor agrees that Plaintiffs will aver they possess

none.  Instead, the Opposition falls back again on the PacFIN and AKFIN databases:  "all of the

information relevant to these inquiries is available to Pacific Seafood via the fish ticket

databases."  (Opp. at 16.)  This response tacitly admits that—*at an absolute minimum*—

Plaintiffs' own fish ticket records are responsive.  Plaintiffs' other records are also responsive, as

described in the Motion and above.  Plaintiffs have responsive documents and should produce

those documents, regardless of whether the "subject matter  . . . will be addressed" later in

Plaintiffs' expert reports.  (App. A at 15 (Response to Request No. 33).)

**G.     Plaintiffs' Attempt to Rely on Rule 26(b)(2)(C) Is Unavailing.**

Finally, Plaintiffs ask the Court to limit discovery "on its own volition" under Federal

Rule of Civil Procedure 26(b)(2)(C).  (Opp. at 17.)  But as explained in the Motion and above,

the Discovery Requests are within the permissible scope of discovery, they are not duplicative of

the PacFIN and AKFIN databases, and Plaintiffs have not shown that producing the documents

would be unduly burdensome.  Therefore, Rule 26(b)(2)(C) is inapplicable.

## II.  CONCLUSION

For all the foregoing reasons, as well as those in Defendants' Motion to Compel, Pacific Seafood respectfully requests that the Court grant its motion.

DATED:  May 22, 2017.

STOEL RIVES LLP

/s/  Rachel C. Lee
Randolph C. Foster, OSB No. 784340
Timothy W. Snider, OSB No. 034577
Rachel C. Lee, OSB No. 102944

and

John W. Stephens, OSB No. 773583
Michael J. Esler, OSB No. 710560
Kim T. Buckley, OSB No. 781589
**ESLER, STEPHENS & BUCKLEY LLP**
121 SW Morrison Street, Suite 700
Portland, OR 97204-2012
Telephone: (503) 223-1510
Fax: (503) 294-3995

Attorneys for Defendants