John W. Stephens, OSB No. 773583
stephens@eslerstephens.com
Michael J. Esler, OSB No. 710560
esler@eslerstephens.com
Kim T. Buckley, OSB No. 781589
buckley@eslerstephens.com
**ESLER, STEPHENS & BUCKLEY LLP**
121 SW Morrison Street, Suite 700
Portland, OR 97204-2012
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

Randolph C. Foster, OSB No. 784340
randy.foster@stoel.com
Timothy W. Snider, OSB No. 034577
timothy.snider@stoel.com
Rachel C. Lee, OSB No. 102944
rachel.lee@stoel.com
**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for All Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| JEFF BOARDMAN, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>PACIFIC SEAFOOD GROUP, et al.,<br><br>   Defendants. | Case No.: 1:15-cv-00108-MC<br><br>**DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES**<br><br>*Expedited Consideration and Oral Argument Requested* |

Page 1 - **DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

## LR 7-1(a) CERTIFICATION

Pursuant to Federal Rule of Civil Procedure ("FRCP") 37(a)(1) and Local Rule 7-1(a),

Defendants ("Defendants" or "Pacific Seafood") certify that the parties conferred in a good faith

effort to resolve the dispute, but were unable to do so.

## MOTION

Pacific Seafood moves pursuant to FRCP 37(a)(3)(B)(iii) to compel Plaintiffs, by a date

certain:

(1)     to serve Pacific Seafood with Plaintiffs' sworn verifications of their answers to

Defendants' First Interrogatories (the "Interrogatories");  and

(2)     to answer completely Interrogatory Nos. 1, 2-4, 9, 11-15, 17-19, including by

Plaintiffs' either (a) providing the requested information in full; (b) stating that

Plaintiffs have no responsive information beyond that provided and will rely

solely on the facts and opinions contained in the expert reports tendered on June

30, 2017; or (c) admitting that neither Plaintiffs nor their experts have any

responsive information, as applicable.

Pursuant to FRCP 37(a)(5)(A), Pacific Seafood also requests an award of its reasonable expenses

incurred in making this motion.

This motion is supported by the Declaration of Randolph C. Foster in Support of

Defendants' Motion to Compel Answers to Interrogatories ("Foster Decl.") and exhibits thereto,

by Plaintiffs' Response to Defendants' First Interrogatories, attached as Appendix A to this

motion, and by the pleadings and file in this action.

<u>MEMORANDUM</u>

## I.    INTRODUCTION

Plaintiffs' responses to Pacific Seafood's Interrogatories were riddled with deficiencies. Plaintiffs informed Pacific Seafood that they would supplement their responses to cure certain deficiencies in June 2017.  Likewise, Plaintiffs asserted that their experts would fully describe certain topics in June 2017.  Neither occurred.

Pacific Seafood is entitled to know what Plaintiffs' positions are and what facts Plaintiffs will rely on at trial.  If Plaintiffs do not have responsive information, Plaintiffs should answer under oath that they do not have that information and will be relying on their experts (or that their experts do not have any responsive information either).  Or, if Plaintiffs have responsive information, they should answer in full themselves.  In any event, Plaintiffs should clarify answers that are incomplete and evasive on their face.  But stonewalling and refusing to supplement—or to verify any answers under oath—fails to comply with Plaintiffs' obligations under FRCP 33.  After repeatedly attempting to obtain supplemented answers and sworn verifications from Plaintiffs, Pacific Seafood must now seek the Court's assistance.

## II.    BACKGROUND

Pacific Seafood served the Interrogatories on Plaintiffs on April 7, 2017.  (Foster Decl., Ex. 1.)  Following an agreed-upon extension, Plaintiffs served Pacific Seafood with their responses on May 15, 2017.  (Foster Decl., ¶¶ 3-4; App. A.)  The responses were signed only by Plaintiffs' attorney; no Plaintiff signed the responses.  (App. A at 12.)

Many of Plaintiffs' responses stated that responsive information would be forthcoming by June 30, 2017 from Plaintiffs or from Plaintiffs' experts.  (*See* App. A (Interrogatory Nos. 2-4, 9, 11-15, 17-19).)  During a meet-and-confer on May 19, 2017, Plaintiffs' counsel stated that

Page 3    -    **DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

Plaintiffs do not have responsive information and would be relying solely on experts for many Interrogatories.  (Foster Decl., ¶ 5.)  Plaintiffs' counsel agreed that Plaintiffs would supplement their answers to clarify and remedy various issues by "early June."  (*Id.*)  On May 22, Pacific Seafood's counsel emailed Plaintiffs' counsel to summarize Plaintiffs' position on those matters and invited Plaintiffs' counsel to correct any misunderstandings.  (Foster Decl., Ex. 2.) Plaintiffs' counsel did not respond.  (Foster Decl., ¶ 7.)

Early June came and went, but Plaintiffs did not supplement their responses.  (*Id.*, ¶ 8.) On June 23, Pacific Seafood's counsel wrote to Plaintiffs' counsel again, laying out the deficiencies in Plaintiffs' responses and Plaintiffs' failure to supplement as agreed.  (Foster Decl., Ex. 3.)  Pacific Seafood asked that Plaintiffs supplement their responses by June 29.  (*Id.* at 2.)  Plaintiffs' counsel did not respond, and Plaintiffs did not supplement.  (Foster Decl., ¶ 10.)

June 30 came, and Plaintiffs served Pacific Seafood with two expert reports (the "Radtke Report" and the "Davis Report").  (*Id.*, ¶ 11.)  The expert reports did not answer the outstanding interrogatories either.  For example, Interrogatory No. 3 asked Plaintiffs to identify all market participants, including sellers and buyers, in each of the relevant markets alleged by Plaintiffs, and Plaintiffs responded that the market participants "will be fully described" in the expert reports.  (App. A.)  Yet the Radtke Report and the Davis Report identify *no sellers* (whether Plaintiffs or any other fishermen) who purportedly participate in any of the relevant markets alleged by Plaintiffs.  (Foster Decl., ¶ 12.)  In other words, Plaintiffs' experts fail to identify which among the 15 alleged markets each Plaintiff is supposedly a market participant in. Furthermore, Plaintiffs' experts identify only three buyers as market participants—Pacific Seafood, Ocean Gold, and Trident Seafoods—even though the reports' appendices purport to

show unidentified "Other" processors as buying up to 95% of either the whiting, groundfish, or shrimp landed in some of the purported geographic markets. (*Id.*, ¶¶ 13-14.)

On July 10, Pacific Seafood's counsel wrote to Plaintiffs' counsel and reviewed the deficiencies yet again. (Foster Decl., Ex. 5.) Pacific Seafood asked that Plaintiffs immediately supplement their responses. (*Id.*) Plaintiffs' counsel did not respond, and Plaintiffs did not supplement. (Foster Decl., ¶¶ 17, 19.)

In sum, despite repeated efforts by Pacific Seafood, Plaintiffs have failed to comply with their obligations to answer the Interrogatories in full under oath. (*Id.*, ¶¶ 18-20.) Pacific Seafood is therefore forced to seek the Court's assistance through this motion to compel.

## III.    ARGUMENT

### A.    Legal Standards

Federal Rule of Civil Procedure 26 authorizes discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"  FRCP 26(b)(1).  Courts construe the Rule "broadly[,] to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  A party may move for an order compelling a full response if an interrogatory answer is evasive or incomplete. *See* FRCP 37(a)(3)(B)(iii); *see also* FRCP 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond").  Furthermore, interrogatories must be answered "in writing under oath" by the parties to whom they are directed.  FRCP 33(b)(1)(A) & (3); *see also* FRCP 33(b)(5) ("The person who makes the answers must sign them, and the attorney who objects must sign any objections.").

**B.    Plaintiffs Waived Any Relevancy Objection, Which Would Be Meritless In Any Event.**

Plaintiffs did not object that any of the Interrogatories sought irrelevant information. Plaintiffs have therefore waived any relevancy objection.  *See* FRCP 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); D. Or. L.R. 26-5(a).

Nevertheless, even if Plaintiffs were to argue that the Interrogatories are not relevant, any such argument would fail.

- Interrogatory Nos. 1 through 4 seek information about market definition and supporting facts, market participants, and the market share that Plaintiffs contend each market participant has.  This information is highly relevant to an antitrust suit. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("Without a definition of the relevant market, it is impossible to determine market share."); *St. Alphonsus Med. Ctr-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 785 (9th Cir. 2015) (prima facie case can be based on statistical metric calculated from market shares of market participants); *Am. Ad. Mgmt , Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) (antitrust plaintiff must be "a participant in the same market as the alleged malefactors").

- Interrogatory No. 9 seeks information about where Plaintiffs' fishing vessels fished and where they delivered their catch, which is relevant to Plaintiffs' allegation that the relevant geographic markets are determined by a universal 60- to 100-mile limit on the distance between where a fishing vessel *catches* fish and where it *delivers* the fish.  (*See* Second Amended Complaint ("SAC"), ¶¶ 33-34.)

- Interrogatory Nos. 11 through 15 seek information about Plaintiffs' allegations regarding Pacific Seafood's alleged conduct, the alleged effects of that conduct, and viable alternative purchasers of Ocean Gold.  (*See* SAC, ¶¶ 3, 37, 39, 49-51.)

- Interrogatory Nos. 17 and 18 ask Plaintiffs to describe all commercial transactions or negotiations involving seafood, seafood processing, seafood storage, or seafood waste that any Plaintiff has had with Pacific Seafood or with Ocean Gold since the *Whaley* settlement.  If Plaintiffs never delivered whiting, shrimp, or groundfish to Pacific Seafood or Ocean Gold and never engaged in transactions with them for seafood processing, storage, or waste, then Plaintiffs lack antitrust standing.  *See Garabet v. Autonomous Techs. Corp.*, 116 F. Supp.2d 1159, 1168-69 (C.D. Cal. 2000).

Page 6    -    **DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

- Request for Admission No. 30 asked Plaintiffs to admit that they do not have any documents establishing that the ex vessel prices offered or paid to them were reduced as a result of any illegal actions by Pacific Seafood or Ocean Gold. Plaintiffs denied that request for admission, implicitly contending that they possess such documents. Interrogatory No. 19 simply asks Plaintiffs to identify those documents, which are the crux of Plaintiffs' theory of the case and the basis for their claim of antitrust injury. (*See* SAC, ¶¶ 38-39, 49, 53, 57, 63(e).)

## C.    The Court Should Compel Plaintiffs to Answer Under Oath.

A party answering an interrogatory must sign the response under oath. FRCP 33(b)(3). An attorney's signature is appropriate only for objections. *See* FRCP 33(b)(5). Sworn responses not only increase the likelihood of truthfulness, they allow the propounding party to use them at trial as admissions of a party-opponent. *See* FRCP 33(c); *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D.Ill. 2010). Accordingly, each Plaintiff—not Plaintiffs' counsel—must provide sworn verification of the responses to the Interrogatories. *See Wanderer v. Johnston*, 910 F.2d 652, 654–55 (9th Cir. 1990) (corporate defendants' failure to verify their interrogatories "contraven[ed] . . . the requirement of Rule 33 that answers be signed"); *Bryant v. Armstrong*, 285 F.R.D. 596, 612 (S.D. Cal. 2012) (statements in interrogatory responses regarding the availability of information were "unverified and made by defense counsel in letters or in [briefing,]" which "is not in compliance with Rule 33 of the Federal Rules of Civil Procedure"); *Hindmon v. Nat'l-Ben Franklin Life Ins. Corp*., 677 F.2d 617, 619 (7th Cir. 1982) (answers to interrogatories signed by attorney rather than party violated FRCP 33(a)).

Despite repeated requests from Pacific Seafood's counsel, none of the Plaintiffs have answered under oath. (Foster Decl., ¶ 20.) Pacific Seafood respectfully requests that the Court order Plaintiffs to serve answers signed by each Plaintiff under oath.

**D.      Plaintiffs' Answer to Interrogatory No. 1 Regarding Market Definition Is Incomplete.**

Interrogatory No. 1 asks Plaintiffs to "[d]escribe in detail all of the relevant markets, including product/service and geographic limitations, that You allege are at issue." (App. A at 3.) In response, Plaintiffs named three product markets (groundfish, whiting, and shrimp) and five geographic markets, for a total of 15 relevant markets. (*Id.*) But Plaintiffs' answer is incomplete in at least four respects. First, Plaintiffs do not identify what fish species they are including in their alleged "groundfish" market. That category could include dozens of species; Pacific Seafood is entitled to know which ones are in Plaintiffs' market definition. Second, Plaintiffs named general geographic areas—"north California Coast; southern Oregon Coast; central Oregon Coast; north Oregon Coast/Columbia River mouth; and south Washington Coast"—without identifying what Plaintiffs assert each area's boundaries are (on land and at sea) or which ports are within each area. (*Id.* at 4.) Third, Interrogatory No. 1 seeks "*all* of the relevant markets" alleged, but Plaintiffs answered that the relevant geographic markets "*include*" the five areas. (*Id.* at 3-4.) Fourth, Plaintiffs do not state whether they assert that the geographic markets are identical for each of the three products. During conferral, Plaintiffs' counsel indicated that Plaintiffs were willing to supplement their answer in some of these regards, but Plaintiffs have not done so. (Foster Decl., ¶¶ 5, 18; Ex. 2.) Pacific Seafood asks the Court to compel Plaintiffs to provide a complete answer to Interrogatory No. 1.

**E.      Plaintiffs' Answers to Interrogatory Nos. 2-4, 9, 11-12, and 19, Which Refer to Plaintiffs' Experts, Are Evasive and Incomplete.**

Interrogatory Nos. 2-4, 9, 11-12, and 19 ask Plaintiffs to identify the facts supporting their description of the relevant market, the market participants, what they contend to be the market share of each market participant, where Plaintiffs' fishing vessels catch and where they

deliver seafood, to identify certain documents that Plaintiffs claim to possess, and to describe the manner in which Pacific Seafood has allegedly harmed fishermen or conspired as alleged in the Second Amended Complaint.

If a party responding to an interrogatory "is unable to provide the requested information, he may not simply refuse to answer," but "must state under oath that he is unable to provide the information." *Bryant*, 285 F.R.D. at 612 (quoting 7 James Wm. Moore, et al., Moore's Federal Practice, § 33.102[1], at 33–72)). Yet Plaintiffs responded to each of these Interrogatories that the responsive information "will be fully described" or "will be included" " in expert witness disclosures that will be tendered on June 30, 2017." (App. A. at 4, 7-9, 12.) Those answers are evasive and incomplete, as they leave open the possibility that Plaintiffs might attempt to testify to additional responsive facts at trial.

During conferral, Plaintiffs' counsel indicated that Plaintiffs do *not* have any responsive information for many of these Interrogatories, but would be relying solely on their experts. (Foster Decl., ¶ 5.) However, despite repeated requests from Pacific Seafood, Plaintiffs have failed to supplement their responses to so indicate, and their expert reports do not answer the Interrogatories either. (Foster Decl., ¶¶ 11-14, 19; Exs. 2-4.) Pacific Seafood asks the Court to compel Plaintiffs to supplement their responses to these Interrogatories to either (1) answer the Interrogatories in full; or (2) state that, other than information provided in the supplemented answers (if any), Plaintiffs have no additional responsive information and will be relying at trial solely on the facts and opinions contained in the Radtke Report and the Davis Report tendered on June 30, 2017.

Page 9   -   **DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

**F.      Plaintiffs' Answers to Interrogatory Nos. 13, 14, and 15, Which Contend Plaintiffs Have Not Had Sufficient Time to Reexamine *Whaley* Discovery, Are Incomplete.**

Interrogatory Nos. 13, 14, and 15 ask Plaintiffs to describe in detail each instance in which Pacific Seafood supposedly engaged in particular conduct alleged in paragraphs 49, 50, and 51 of the Second Amended Complaint.  Plaintiffs' answer to each Interrogatory stated only: "Plaintiffs have not had sufficient time to reexamine the discovery documents produced in the *Whaley* litigation, but should be in a position to supplement this response no later than June 30, 2017."  (App. A at 9-10.)

This answer is incomplete, and there is no justification for further delay.  Plaintiffs have had more than two years since they alleged this conduct to determine what their allegation actually means.  Furthermore, Plaintiffs have now had more than three months since Pacific Seafood propounded these Interrogatories on April 7.  Finally, Plaintiffs failed to supplement their responses by June 30 as promised.  (Foster Decl., ¶ 10.)  Pacific Seafood asks the Court to compel Plaintiffs to either (1) answer these Interrogatories in full; or (2) admit that neither Plaintiffs nor their experts possess any responsive information.

**G.      Plaintiffs' Answer to Interrogatory No. 12, Which Refers Vaguely to Unspecified Emails and Prices, Is Evasive.**

Interrogatory No. 12 asks Plaintiffs to "[d]escribe in detail the manner in which" Pacific Seafood purportedly conspired between 2005 and 2012 to fix ex vessel prices and allocate fishing vessel suppliers, as alleged in paragraph 39 of the Second Amended Complaint. Plaintiffs answered by stating that the alleged conspiracy was supported by unspecified emails during the *Whaley* lawsuit and unspecified prices during 2005 through 2010.  (App. A at 9.) Plaintiffs' answer is incomplete and evasive.  A vague reference to unspecified emails and prices does not comply with Plaintiffs' obligation to answer in full.  *See* FRCP 33(d)(1) (must identify

Page 10  -   **DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could"). Plaintiffs recognize as much. During conferral, Plaintiffs' counsel indicated that Plaintiffs would supplement their answer at an undefined date in "early" June, but Plaintiffs have not done so. (Foster Decl., ¶¶ 5, 19; Ex. 2.) Pacific Seafood asks the Court to compel Plaintiffs to either (1) answer Interrogatory No. 12 in full; or (2) admit that neither they nor their experts have any such emails, prices, or data.

**H.    Plaintiffs' Answers to Interrogatory Nos. 17 and 18 Regarding Plaintiffs' Transactions with Pacific Seafood and Ocean Gold Are Evasive and Incomplete.**

Plaintiffs are not entitled to assert antitrust claims against Pacific Seafood unless they have antitrust standing, which is a more stringent inquiry than Article III standing. *Lucas Automotive Engineering, Inc. v. Bridgestone/ Firestone, Inc.,* 140 F.3d 1228, 1232 (9th Cir. 1998); *Bubar v. Ampco Foods, Inc.,* 752 F.2d 445, 448-49 (9th Cir. 1985). If Plaintiffs never conducted business with Pacific Seafood or Ocean Gold and merely supply Pacific Seafood's competitors, as Pacific Seafood anticipates the evidence will show, then Plaintiffs lack antitrust standing. *See Garabet*, 116 F. Supp.2d at 1168-69. Thus, the antitrust standing inquiry necessarily demands a full compilation of any commercial transactions that Plaintiffs had with Pacific Seafood or Ocean Gold, including both ex vessel sales and any transactions involving the other areas of Ocean Gold's business—namely, seafood processing, seafood storage, or seafood waste.

To this end, Interrogatory Nos. 17 and 18 ask Plaintiffs to identify all transactions and negotiations Plaintiffs had with Ocean Gold and Pacific Seafood involving seafood, seafood processing, seafood storage, or seafood waste since the *Whaley* settlement. Plaintiffs did not

object that these Interrogatories were burdensome or disproportionate.[1]  Instead, Plaintiffs responded that their experts were "using PacFIN data to assemble a list of all of plaintiffs' commercial transactions with Pacific Seafood that will be available on or before June 30, 2017." (App. A. at 11.)  But Plaintiffs have not provided any such list to Plaintiffs.  (Foster Decl., ¶ 18.) Pacific Seafood asks the Court to compel Plaintiffs to supplement their responses to these Interrogatories to either (1) answer the Interrogatories in full; or (2) admit that neither Plaintiffs nor their experts have any responsive information.

## IV.    CONCLUSION

Pacific Seafood respectfully requests that the Court compel Plaintiffs (1) to serve Pacific Seafood with Plaintiffs' sworn verifications of their answers the Interrogatories;  and (2) to answer completely Interrogatory Nos. 1, 2-4, 9, 11-15, 17-19, by a date set by the Court. Pursuant to FRCP 37(a)(5)(A), Pacific Seafood also respectfully requests an award of its reasonable expenses.

DATED:  July 13, 2017.

STOEL RIVES LLP


/s/ Rachel C. Lee
Randolph C. Foster, OSB No. 784340
Timothy W. Snider, OSB No. 034577
Rachel C. Lee, OSB No. 102944

and

---

[1] Plaintiffs waived any such objections by not timely asserting them.  *Richmark*, 959 F.2d at 1473; FRCP 33(b)(4); D. Or. L.R. 26-5(a).  Such objections would be baseless anyway.  There will be few (if any) responsive transactions or negotiations, and the requested information is key to whether Plaintiffs are entitled to even seek relief from this Court.  Furthermore, Pacific Seafood does not have Ocean Gold's records, and the PacFIN database will not contain information about any transactions or negotiations involving seafood processing, storage, or waste.

John W. Stephens, OSB No. 773583
Michael J. Esler, OSB No. 710560
Kim T. Buckley, OSB No. 781589
**ESLER, STEPHENS & BUCKLEY LLP**
121 SW Morrison Street, Suite 700
Portland, OR 97204-2012
Telephone: (503) 223-1510
Fax: (503) 294-3995

Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

The foregoing memorandum complies with the applicable word-count limitation under LR 26-3(b) because it contains 3,000 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED:  July 13, 2017.

STOEL RIVES LLP

/s/ Rachel C. Lee
Randolph C. Foster, OSB No. 784340
Timothy W. Snider, OSB No. 034577
Rachel C. Lee, OSB No. 102944

and

John W. Stephens, OSB No. 773583
Michael J. Esler, OSB No. 710560
Kim T. Buckley, OSB No. 781589
**ESLER, STEPHENS & BUCKLEY LLP**
121 SW Morrison Street, Suite 700
Portland, OR 97204-2012
Telephone: (503) 223-1510
Fax: (503) 294-3995

Attorneys for Defendants

Appendix A

**Michael E. Haglund,** OSB No. 772030
email:  mhaglund@hk-law.com
**Michael K. Kelley,** OSB No. 853782
email:  mkelley@hk-law.com
**Eric J. Brickenstein**, OSB No. 142852
email: ebrickenstein@hk-law.com
**HAGLUND KELLEY LLP**
200 SW Market Street, Suite 1777
Portland, OR  97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Medford Division)

| | |
|---|---|
| **JEFF BOARDMAN, DENNIS RANKIN, ROBERT SEITZ, TODD L. WHALEY, LLOYD D. WHALEY, SOUTH BAY WILD, INC., MISS SARAH, LLC,** and **MY FISHERIES, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**PACIFIC SEAFOOD GROUP, OCEAN GOLD HOLDING CO., INC., DULCICH, INC., FRANK DULCICH, PACIFIC SEAFOOD GROUP ACQUISITION COMPANY, INC., PACIFIC SEAFOOD WASHINGTON ACQUISITION CO., INC., BANDON PACIFIC, INC., BIO-OREGON PROTEIN, INC., PACIFIC CHOICE SEAFOOD COMPANY, PACIFIC COAST SEAFOODS COMPANY, PACIFIC GARIBALDI, INC., PACIFIC GOLD SEAFOOD COMPANY, PACIFIC PRIDE SEA FOOD COMPANY, PACIFIC SEA FOOD CO., PACIFIC SURIMI CO., INC., PACIFIC TUNA COMPANY, LLC, WASHINGTON** | Case No.:  1:15-cv-00108-MC<br><br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES** |

PAGE 1 – **PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**

CRAB PRODUCERS, INC., PACIFIC
ALASKA SHELLFISH, INC., SEA
LEVEL SEAFOODS, LLC, ISLAND FISH
CO., LLC, PACIFIC RESURRECTION
BAY, PACIFIC CONQUEST, INC.,
CALAMARI, LLC, JO MARIE LLC,
LESLIE LEE, LLC, MISS PACIFIC, LLC,
PACIFIC FUTURE, LLC, PACIFIC
GRUMPY J, LLC, PACIFIC HOOKER,
LLC, PACIFIC HORIZON, LLC,
PACIFIC KNIGHT, LLC, PRIVATEER
LLC, SEA PRINCESS, LLC, TRIPLE
STAR, LLC, PACIFIC FISHING, LLC,
PACIFIC SEA FOOD OF ARIZONA,
INC., STARFISH INVESTMENTS, INC.,
DULCICH SURIMI, LLC, BIO-OREGON
PROPERTIES, LLC, PACIFIC GROUP
TRANSPORT CO., PACIFIC
MARKETING GROUP, INC., PACIFIC
RUSSIA, INC., PACIFIC RUSSIA
VENTURES, LLC, PACIFIC TUNA
HOLDING COMPANY, INC., POWELL
STREET MARKET LLC, PACIFIC
FRESH SEA FOOD COMPANY,
SEACLIFF SEAFOODS, INC., COPPER
RIVER RESOURCE HOLDING CO.,
INC., PACIFIC COPPER RIVER
ACQUISITION CO., INC., SEA LEVEL
SEAFOODS ACQUISITION, INC.,
ISLAND COHO, LLC, S & S SEAFOOD
CO., INC., PACIFIC SEAFOOD DISC,
INC.,  DULCICH REALTY, LLC,
DULCICH REALTY ACQUISITION,
LLC, DULCICH JET, LLC, and OCEAN
COMPANIES HOLDING CO., LLC,

Defendants.

PAGE 2 – **PLAINTIFFS' RESPONSE TO
DEFENDANTS' FIRST INTERROGATORIES**

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR  97201
Tel:  (503) 225-0777 / Fax:  (503) 225-1257
PL49 -- 49903

Plaintiffs respond to Defendants' First Interrogatories as follows:

## GENERAL OBJECTIONS

1.      Plaintiffs object to Defendants' First Interrogatories on the grounds and to the extent that these requests attempt to require disclosure of documents and information that is privileged as an attorney-client communication and/or constitutes attorney work product prepared in anticipation of litigation, and/or is otherwise protected from disclosure by other applicable privileges, laws or statutes.

2.      Plaintiffs object to Defendants' First Interrogatories on the grounds and to the extent the defendants attempt to impose obligations on plaintiffs beyond the scope of the Federal Rules of Civil Procedure, specifically Rules 26 and 33.

3.      Plaintiffs object to Defendants' First Interrogatories on the grounds and to the extent that these requests require the disclosure of confidential business information.  Plaintiffs will not respond to any requests requiring production of confidential and/or competitively sensitive information until an appropriate Protective Order has been signed by defendants and entered with the Court.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in detail all of the relevant markets, including product/ service and geographic limitations, that You allege are at issue in this lawsuit.

**ANSWER:**  Trawl-caught groundfish, whiting delivered onshore and coldwater shrimp are relevant antitrust product markets that are found on the U.S. West Coast from Ft. Bragg, California north to the Canadian border and consist of five geographically distinct markets containing a single major port or cluster of ports.  The five geographically distinct relevant product markets for trawl-caught groundfish, onshore whiting and Pacific coldwater shrimp,

PAGE 3 – **PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR  97201
Tel:  (503) 225-0777 / Fax:  (503) 225-1257
*PL49 -- 49903*

Appendix A
Page 3 of 13

running south to north include:  north California Coast; southern Oregon Coast; central Oregon Coast; north Oregon Coast/Columbia River mouth; and south Washington Coast.

**INTERROGATORY NO. 2:**

Identify each and every fact, including, but not limited to, all Documents upon which You rely in support of your description of each relevant market that You described in Your response to Interrogatory No. 1.

**ANSWER:**  The facts and data supporting the relevant markets described in response 1 are the subject of ongoing expert analysis on behalf of plaintiffs, but will be fully described in one or more expert witness disclosures that will be tendered on June 30, 2017.

**INTERROGATORY NO. 3:**

Identify in detail all of the market participants, including sellers and buyers, in each relevant market that You described in Your response to Interrogatory No. 1.

**ANSWER:**  The market participants in the relevant markets described in response no. 1 are the subject of ongoing expert analysis on behalf of plaintiffs, but will be fully described in one or more expert witness disclosures that will be tendered on June 30, 2017.

**INTERROGATORY NO. 4:**

State what you contend to be the market share of each of the market participants identified in response to Interrogatory No. 3 for each of the relevant markets identified in response to Interrogatory No. 1, and describe in detail the manner in which you determined those market shares.

**ANSWER:**  The market shares of the market participants in the relevant markets described in response no. 1 are the subject of ongoing expert analysis on behalf of plaintiffs, but

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR  97201
Tel:  (503) 225-0777 / Fax:  (503) 225-1257
PL49 -- 49903

will be fully described in one or more expert witness disclosures that will be tendered on June 30, 2017.

**INTERROGATORY NO. 5:**

Identify any and all idled, moth-balled, or closed seafood processing facilities on the west coast between Fort Bragg, California to the Canadian border in existence as of January 1, 2015 that were not actively engaged in seafood processing, including, without limitation, the location or address of each such facility and the identity of its owner(s).

**ANSWER:** Plaintiffs are aware of the following closed seafood processing facilities on the West Coast: a closed facility in Crescent City owned by Pacific Seafood Group; and the former California Shellfish property in Newport also owned by Pacific Seafood Group. Discovery is ongoing and plaintiffs will supplement this response if the identity and location of other closed seafood processing facilities is discovered.

**INTERROGATORY NO. 6:**

Identify any and all cold storage facilities on the west coast between Fort Bragg, California to the Canadian border in existence as of January 1, 2015, including, without limitation, the location or address of each such facility and the identity of its owner(s).

**ANSWER:** Plaintiffs are aware of the following cold storage facilities on the West Coast: Ocean Cold in West Port, Washington; Da Yang Seafood's cold storage facility in Astoria, Oregon; and Pacific Seafood's Newport cold storage facility. Discovery is ongoing and plaintiffs will supplement this response if the identity and location of other closed cold storage facilities is discovered.

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
*PL49 -- 49903*

**INTERROGATORY NO. 7:**

Identify any and all fish waste processing facilities on the west coast between Fort Bragg, California to the Canadian border in existence as of January 1, 2015, including, without limitation, the location or address of each such facility and the identity of its owner(s).

**ANSWER:** Plaintiffs are aware of the following fish waste processing facilities on the West Coast: Ocean Protein in Hoquiam, Washington; Bio-Oregon in Warrenton, Oregon; and Pacific Seafood's recently acquired meal plant in Newport, Oregon. Discovery is ongoing and plaintiffs will supplement this response if the identity and location of other closed fish waste processing facilities is discovered.

**INTERROGATORY NO. 8:**

Describe in detail each and every item of relief you seek in connection with each claim alleged in this lawsuit.

**ANSWER:** Plaintiffs seek court orders prohibiting Pacific Seafood Group from acquiring any of the assets of Ocean Gold Seafoods and its affiliates, providing appropriate remedies to address violations of the Court-ordered injunction by Pacific Seafood Group and an award of plaintiffs' attorney's fees and costs.

**INTERROGATORY NO. 9:**

For each fishing vessel owned or operated, in whole or in part, by any Plaintiff, for the period of January 1, 2010 to present, including but not limited to the F/V Miss Yvonne, F/V Steve C, F/V Ashlyne, F/V South Bay, F/V Miss Sarah, F/V Miss Emily, F/V B.J. Thomas, and F/V Cape Sebastian, identify where each vessel fished and delivered each catch from January 1, 2010 to present, including:

PAGE 6 – **PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
*PL49 -- 49903*

    a.   the date or dates of each fishing trip;

    b.   the species fished during such trip;

    c.   the port of departure;

    d.   the port of return; and

    e.   the place of delivery of the catch.

**ANSWER:**  The data requested for each of the fishing vessels owned or operated by any plaintiff is the subject of ongoing expert analysis, but will be fully described in one or more expert witness disclosures that will be tendered on June 30, 2017.

**INTERROGATORY NO. 10:**

Identify each "viable alternative purchaser[] of Ocean Gold Seafoods and its affiliates other than defendants," how you identified each alternative purchaser, and describe in detail how an acquisition of Ocean Gold by each alternative purchaser would "benefit West Coast fishermen and U.S. consumers," as alleged in paragraph 3 of the Second Amended Complaint.

**ANSWER:**  Viable alternative purchasers of Ocean Gold Seafoods and its affiliates include existing competitors of Pacific Seafood Group including Bornstein Seafoods and Da Yang Seafoods as well as potential new entrants such as a partnership involving Richard Carroll and Ed Backus.  The acquisition of Ocean Gold Seafoods and its affiliates by an existing competitor or a new entrant would break up the 100% market share that Pacific Seafood Group currently holds in the south Washington Coast relevant product markets for trawl-caught groundfish, onshore whiting and Pacific coldwater shrimp.  West Coast fishermen in this market would benefit from increased processor competition in the form of higher ex vessel prices and consumers would benefit from the innovation and value-added products that are more efficiently and effectively produced in competitive markets as opposed to monopolized ones.

PAGE 7 – **PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR  97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
PL49 -- 49903

**INTERROGATORY: NO. 11**

Describe in detail the manner in which Pacific Seafood "has inflicted significant harm upon West Coast fishermen, fishing vessel owners and coastal communities that depend in significant part on the economics of the fishing industry," as alleged in paragraph 37 of the Second Amended Complaint.

**ANSWER:** Pacific Seafood's monopoly power position in four of the five geographically distinct product markets for trawl-caught groundfish, onshore whiting and Pacific coldwater shrimp has been utilized to suppress ex vessel prices in these markets paid to fishermen, which inflicts economic damage on fishing vessel crews, fishing vessel owners and coastal communities that see lower levels of fishing generated incomes and related commerce circulating in their communities. Data supporting this contention is the subject of ongoing expert analysis that will be included in one or more expert witness disclosures tendered on June 30, 2017.

**INTERROGATORY NO. 12:**

Describe in detail the manner in which "between at least 2005 and 2012, Pacific Seafood Group actively conspired with Ocean Gold Seafoods to fix the ex vessel prices paid to fishermen in the onshore whiting market and to allocate individual fishing vessel suppliers in this seafood input market between Pacific Seafood Group and Ocean Gold Seafoods," as alleged in paragraph 39 of the Second Amended Complaint. If Plaintiffs now contend that the conduct alleged in paragraph 39 of the Second Amended Complaint has continued beyond 2012, also provide the above information for any such additional instances or occurrences.

PAGE 8 – **PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
PL49 -- 49903

==ANSWER:  Plaintiffs in the *Whaley* case produced emails between Pacific Seafood and Ocean Gold Seafoods supporting the existence of a price-fixing conspiracy between Pacific Seafood Group and Ocean Gold Seafoods.  That conspiracy was also corroborated by the prices paid by the two companies to fishermen during the period of 2005 through 2010.  This data is the subject of ongoing expert analysis that will be included in one or more expert witness disclosures tendered on June 30, 2017.==  With respect to this conduct beyond 2012, active discovery is only now underway.  Plaintiffs will supplement this response regarding the discovery of evidence of additional instances or occurrences.

==INTERROGATORY NO. 13:==

Describe in detail each instance in which Pacific Seafood used a "tactic to set and enforce ex vessel prices" from 1983 to mid-2010, as alleged in paragraph 49 of the Second Amended Complaint. If Plaintiffs now contend that the conduct alleged in paragraph 49 of the Second Amended Complaint has continued beyond mid-2010, also provide the above information for any such additional instances or occurrences.

==ANSWER:  Plaintiffs have not had sufficient time to reexamine the discovery documents produced in the *Whaley* litigation, but should be in a position to supplement this response no later than June 30, 2017.==

==INTERROGATORY NO. 14:==

Describe in detail each instance in which Pacific Seafood used a "scheme to coerce [a fisherman or] fishermen into long-term exclusive dealing arrangements for which Pacific Seafood Group essentially dictated seafood commodity pricing to the involved fishermen" between 2002 and 2012, as alleged in paragraph 50 of the Second Amended Complaint. If Plaintiffs now contend that the conduct alleged in paragraph 50 of the Second Amended

PAGE 9 – **PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR  97201
Tel:  (503) 225-0777 / Fax:  (503) 225-1257
*PL49 -- 49903*

Appendix A
Page 9 of 13

Complaint has continued beyond 2012, also provide the above information for any such additional instances or occurrences.

ANSWER: Plaintiffs have not had sufficient time to reexamine the discovery documents produced in the *Whaley* litigation, but should be in a position to supplement this response no later than June 30, 2017.

**INTERROGATORY NO. 15:**

Describe in detail each instance in which Pacific Seafood "engaged in the theft of seafood commodities from fishermen" from 1983 to mid-2010, as alleged in paragraph 51 of the Second Amended Complaint. If Plaintiffs now contend that the conduct alleged in paragraph 51 of the Second Amended Complaint has continued beyond 2010, also provide the above information for any such additional instances or occurrences.

ANSWER: Plaintiffs have not had sufficient time to reexamine the discovery documents produced in the *Whaley* litigation, but should be in a position to supplement this response no later than June 30, 2017.

**INTERROGATORY NO. 16:**

Identify "West coast fishermen" who "do not fish more than 60 to 100 miles away from the processor to which the seafood commodity will be delivered" as alleged in paragraph 33 of the Second Amended Complaint.

ANSWER: At present, plaintiffs are not aware of any fishermen who fish more than 60 to 100 miles away from the processor to which the seafood commodity will be delivered, but plaintiffs' investigation is continuing and this response will be supplemented if warranted.

/ / /

/ / /

PAGE 10 – **PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
*PL49 -- 49903*

**INTERROGATORY NO. 17:**

Describe in detail all commercial transactions or negotiations involving seafood, seafood processing, seafood storage, or seafood waste that any Plaintiff has had with any Pacific Seafood Group entity since the date of the *Whaley* settlement on April 2, 2012.

**ANSWER:** Plaintiffs' experts are using PacFIN data to assemble a list of all of plaintiffs' commercial transactions with Pacific Seafood that will be available on or before June 30, 2017.

**INTERROGATORY NO. 18:**

Describe in detail all commercial transactions or negotiations involving seafood, seafood processing, seafood storage, or seafood waste that any Plaintiff has had with any Ocean Gold entity since the date of the *Whaley* settlement on April 2, 2012.

**ANSWER:** Plaintiffs' experts are using PacFIN data to assemble a list of all of plaintiffs' commercial transactions with Ocean Gold that will be available on or before June 30, 2017.

**INTERROGATORY NO. 19:**

To the extent You denied Request for Admission No. 30, identify all documents Plaintiffs possess establishing that, from January 1, 2010 to the present, the price offered or paid to any Plaintiff by any seafood processor in any relevant markets identified in response to Interrogatory No. 1 was reduced as a result of any illegal actions, tactics, or schemes used or employed by Pacific Seafood or Ocean Gold.

/ / /

/ / /

PAGE 11 – **PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
*PL49 -- 49903*

**ANSWER:** The data supporting plaintiffs' denial of Request for Admission No. 30 is the subject of ongoing expert analysis on behalf of plaintiffs, which will be fully described in one or more expert witness disclosures that will be tendered on June 30, 2017.

Dated this 15 day of May, 2017.

HAGLUND KELLEY LLP

By:

Michael E. Haglund, OSB No. 772030
email: mhaglund@hk-lawcom
Michael K. Kelley, OSB No. 853782
email: kelley@hk-law.com
Eric J. Brickenstein, OSB No. 142852
email; ebrickenstein@hk-law.com
Attorneys for Plaintiffs

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
PL49 -- 49903

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of May, 2017, I served the foregoing **PLAINTIFFS'**

**RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES**, on the following:

Michael J. Esler                              Randolph C. Foster
John W. Stephens                          Timothy W. Snider
Kim T. Buckley                              Rachel C. Lee
Esler Stephens & Buckley, LLP      Stoel Rives LLP
121 SW Morrison St., Ste. 700        900 SW Fifth Avenue, Suite 2600
Portland, OR 97204-2021               Portland, OR  97204-3183
esler@eslerstephens.com               Randy.foster@stoel.com
stephens@eslerstephens.com          Timothy.snider@stoel.com
buckley@eslerstephens.com           Rachel.lee@stoel.com

by the following indicated method(s):

☒     by regular **mail** in a sealed first-class postage prepaid envelope and deposited
        with the United States Post Office at Portland, Oregon.

☒     by **email**.

☐     by **hand delivery**.

☐     by **overnight mail**.

☐     by **facsimile** as indicated.

☐     by transmitting full through the court's Cm/ECF system.

_____
Michael E. Haglund
Eric J. Brickenstein
Attorney for Plaintiffs

**PAGE 1 -- CERTIFICATE OF SERVICE**